IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


STEPHANIE JANEEN WALDEN,

                    Plaintiff,

vs.                                    Case No. 11-4120-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

        The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993). At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy. Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner
meets this burden if the decision is supported by substantial
evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 10, 2011, administrative law judge (ALJ) Michael
D. Lance issued his decision (R. at 17-27). Plaintiff alleges
that she has been disabled since May 17, 2009 (R. at 17).
Plaintiff is insured for disability insurance benefits through
December 31, 2010 (R. at 19). At step one, the ALJ found that
plaintiff has not engaged in substantial gainful activity since
plaintiff's alleged onset date (R. at 19). At step two, the ALJ
found that plaintiff had the following severe impairments: major

4

depressive disorder, fibromyalgia, obesity and asthma (R. at 19). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 20).  After determining plaintiff's RFC (R. at 21), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 25).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 25-26).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III.  Did the ALJ err in the weight he accorded to the opinions of plaintiff's treating physicians?**

The ALJ found that plaintiff would be limited to sedentary work, and could not climb ramps, stairs, ropes, ladders or scaffolds, but could occasionally stoop, kneel, crouch and crawl. He found that plaintiff should avoid concentrated exposure to excessive vibration, pulmonary irritants, hazardous machinery and unprotected heights, and must work in a temperature-controlled environment.  Additionally, the claimant is limited to unskilled work that requires no more than occasional contact with the public and co-workers (R. at 21).

On November 19, 2009, Dr. Murphy, plaintiff's treating physician, opined that plaintiff could stand and/or walk for up to 2 hours in an 8 hour workday, could sit for up to 4 hours in an 8 hour workday, and that plaintiff, when sitting, needs to be

in a recliner with her feet elevated above waist level.  She must

be able to shift at will from sitting or standing/walking, and

would need to lie down every 2 hours for 30 minutes at a time,

can never climb stairs or ladders, and must avoid concentrated

exposure to extreme cold or heat, wetness, humidity, and hazards.

He further opined that plaintiff would miss work 3 or more times

a month because of her impairments or treatment (R. at 394-397).

On April 15, 2010, another treating physician, Dr. Mhatre, opined

that the restrictions and limitations set out in Dr. Murphy's

report of November 19, 2009 remain in effect (R. at 432).

The ALJ made the following findings regarding the opinions

of these two treatment providers:

> I give the opinions of Drs. Murphy and Mhatre
> some weight because the medical record as a
> whole supports a finding that the claimant
> has some limitations.  However, the medical
> record as a whole does not support Drs.
> Murphy's and Mhatre's opinion in that the
> level of restriction they opine is
> inconsistent with the other medical opinions
> and the claimant's activities of daily
> living.  Neither of these doctors gave any
> specific reasons as to why the claimant would
> be as limited as they suggest.

(R. at 25).

The ALJ must give good reasons in his/her decision for the

weight he/she ultimately assigns a treating source opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).  The

ALJ in the case before the court discounted the opinions of Dr.

Murphy and Dr. Mhatre regarding plaintiff's level of restriction

because: (1) their opinions were inconsistent with the other
medical opinions, (2) their opinions were inconsistent with
plaintiff's activities of daily living, and (3) neither doctor
gave any specific reasons as to why the plaintiff would be as
limited as they suggest.

The court will first address the ALJ's assertion that
neither doctor gave any specific reasons as to why the plaintiff
would be as limited as they suggest.  In Question #7 of Dr.
Murphy's report, he was asked:

> Q: What medical findings support the
> limitations described above?
>
> A: Complaints of extreme fatigue with low
> energy and depression.  Multiple areas of
> soft tissue pain/stiffness consistent with
> fibromyalgia.

(R. at 395).  Thus, contrary to the ALJ's assertion, the report
from Dr. Murphy indicates that he was asked what findings support
the limitations he set forth, and Dr. Murphy set forth the
medical findings that, in his opinion, supported the limitations
he described in his report.  This rationale by the ALJ for
discounting the opinion of Dr. Murphy is not supported by the
record.

Second, the ALJ states that the level of restrictions they
opine is inconsistent with the other medical opinions.  However,
the ALJ failed to state what other medical opinions were
inconsistent with the opinions of Drs. Murphy and Mhatre, and,

most importantly, the ALJ failed to indicate why those other opinions should be accorded greater weight.  The ALJ should identify any contradictory or substantial medical evidence that outweighed the treating physician opinions.  <u>Daniell v. Astrue</u>, 384 Fed. Appx. 798, 802 (10th Cir. June 29, 2010).

The only other medical opinion evidence regarding plaintiff's physical limitations was a state agency RFC assessment completed by a non-examining physician, which limited plaintiff to light work (R. at 24, 416-423, 430).  However, the ALJ only accorded "some" weight to this opinion, noting that the physicians who filled out this form had never examined the plaintiff.  The ALJ found that "other medical opinions suggest greater limitations," and concluded that plaintiff be limited to sedentary work (R. at 24).  The only other medical opinions in the record regarding plaintiff's limitations were those of Drs. Murphy and Mhatre.  Thus, this statement by the ALJ suggests that the ALJ gave greater weight to the opinions of Drs. Murphy and Mhatre.  However, when discussing the opinions of Drs. Murphy and Mhatre, the ALJ stated that he was discounting their opinions because they were inconsistent with the other medical opinions.  However, as noted above, the only other medical opinion regarding plaintiff's limitations was the state agency assessment.  Thus, inexplicably, the ALJ appeared to utilize the report of Drs. Murphy and Mhatre to discount the opinions in the state agency

8

assessment, and then turned around and appeared to utilize the state agency assessment to discount the opinions of Drs. Murphy and Mhatre.  The court cannot ascertain what relative weight the ALJ gave to any of the medical opinion evidence.

The ALJ rejected the opinion in the state agency assessment that plaintiff could perform light work, and limited her to sedentary work (R. at 21, 24).  Drs. Murphy and Mhatre opined that plaintiff could only lift 10 pounds, which is consistent with sedentary work (R. at 394, 20 C.F.R. § 404.1567(a)).  The ALJ also rejected the opinion in the state agency assessment that plaintiff had no postural limitations, and imposed some postural limitations in his RFC findings (R. at 21, 418).  In fact, the ALJ's postural limitations are similar to the opinions of Drs. Murphy and Mhatre (R. at 21, 395).  The only opinion of Drs. Murphy and Mhatre which the ALJ rejected was their opinion that plaintiff could not sit, stand, and/or walk for 8 hours of 8 hour workday, and would need to lie down periodically during a workday.  However, the ALJ provided no explanation for rejecting that opinion, especially in light of the fact that the ALJ had made RFC findings consistent with their opinions regarding plaintiff's ability to lift and her postural limitations, and the ALJ had stated that other medical opinions had suggested that plaintiff had greater limitations than those contained in the state agency assessment.

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

In the case before the court, the ALJ has failed to provide

10

a legally sufficient explanation for rejecting some of the
opinions of two treating physicians, Dr. Murphy and Mhatre, in
favor of either the opinions of non-examining medical sources, or
based on other medical evidence in the record.  In fact, the ALJ
has failed to provide any explanation for adopting some of the
opinions of the treatment providers, but not others.  It is not
at all clear to the court how the RFC, as a whole, was derived.
The decision is unreviewable because the court is unable to
discern how the ALJ reached his decision.  Frye v. Astrue, Case
No. 10-1251-SAC (D. Kan. July 6, 2011, slip op. at 9); Kency v.
Barnhart, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004, slip op.
at 8).  When this case is remanded, the ALJ must comply with SSR
96-8p, which states that the RFC assessment must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts and nonmedical
evidence.  The ALJ must also explain how any material
inconsistencies or ambiguities in the evidence in the case record
were considered and resolved.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted.  1996 WL 374184 at *7.

     Third, the ALJ discounted the opinions of Drs. Murphy and
Mhatre because their opinions were inconsistent with plaintiff's
activities of daily living.  In his decision, the ALJ noted that
the plaintiff indicated that she took care of her daughter, got

11

her ready for school, used a computer, watched movies, cooked, cleaned, drove, shopped with help from her family, and performed household chores (R. at 20, 23).  Plaintiff also testified that she could walk for 10 minutes, stand for 10 minutes, lift a gallon of milk and can sit if she is able to switch positions (R. at 23).  However, the ALJ has failed to explain how plaintiff's activities of daily living, as the ALJ set forth in his opinion, are inconsistent with the opinions of Drs. Murphy and Mhatre. The only opinion of the two treating physicians that the ALJ clearly rejected was their opinion that she could not sit, stand and/or walk for 8 hours of an 8 hour workday, and would need to lie down periodically during the workday.  Nothing in the daily activities, as summarized by the ALJ in his decision, is clearly inconsistent with these opinions from the two treatment providers.

Furthermore, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2011 at 398).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind

that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  <u>Thompson</u>, 987 F.2d at 1490.

In the case of <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**.  As we said in <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In <u>Rainey v. Dep't of Health & Human Servs.</u>, 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In <u>Baumgarten v. Chater</u>, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed,

13

preparing food, performing light
housekeeping, grocery shopping, and visiting
friends.  We found this to be an unpersuasive
reason to deny benefits: **"We have repeatedly
held...that 'the ability to do activities
such as light housework and visiting with
friends provides little or no support for the
finding that a claimant can perform full-time
competitive work.' "** Id. (quoting <u>Hogg v.
Shalala</u>, 45 F.3d 276, 278 (8th Cir.1995)).
Moreover, we have reminded the Commissioner

> **that to find a claimant has the
> residual functional capacity to
> perform a certain type of work, the
> claimant must have the ability to
> perform the requisite acts day in
> and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or visit
> with friends on the phone does not
> qualify as the ability to do
> substantial gainful activity.**

<u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th
Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).  When this case is
remanded, plaintiff's daily activities must be considered in
light of all the evidence and the case law set forth above.

In summary, substantial evidence does not support any of the
three rationales set forth by the ALJ for discounting the
opinions of the two treatment providers.  Therefore, this case
shall be remanded in order for the ALJ to give proper
consideration to the treating source opinions.

**IV.  Did the ALJ err in his credibility analysis?**

Plaintiff also asserts error by the ALJ in his credibility findings.  The court will not discuss this issue in detail because it may be affected by the ALJ's resolution of the case on remand after giving proper consideration to the opinions of plaintiff's treating physicians.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  However, the court will briefly address one issue raised by plaintiff in her brief that is relevant to plaintiff's credibility and the diagnosis of plaintiff's treatment providers.

In his decision, the ALJ stated:

> However, there is no objective medical
> evidence in the record to support the level
> of limitation alleged by the claimant.

(R. at 24).  In this case, Dr. Murphy found that plaintiff's limitations were due to fibromyalgia (R. at 395), and Dr. Mhatre confirmed the limitations in Dr. Murphy's report, and noted that he was treating plaintiff for fibromyalgia (R. at 432).

As this and other courts have repeatedly stated, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity. Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr. 11, 2007)(the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia); Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004);

15

Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000);
Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward
v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999).  Because
fibromyalgia is diagnosed by ruling out other diseases through
medical testing, negative test results or the absence of an
objective medical test to diagnose the condition cannot support a
conclusion that a claimant does not suffer from a potentially
disabling condition.  Priest, 302 F. Supp.2d at 1213.
Fibromyalgia is diagnosed entirely on the basis of patients'
reports and other symptoms.  Brown v. Barnhart, 182 Fed. Appx.
771, 773 n.1 (10th Cir. May 25, 2006).  Thus, in light of the
diagnosis of fibromyalgia, the ALJ erred by discounting
plaintiff's allegations of limitations because of the lack of
objective medical evidence.

**V.  Did the ALJ err in his step two findings?**

     At step two, the ALJ found that plaintiff's migraine
headaches were not a severe impairment because they did not cause
significant limitations in plaintiff's ability to perform basic
work activity.  The ALJ noted that the medical record did not
show any consistent ongoing medication or treatment, or a
limitation in the plaintiff's ability to perform basic work
activities because of this impairment (R. at 19).  Plaintiff
claims that the ALJ erred by not finding that plaintiff's
migraine headaches were a severe impairment.

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1]  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.

---

[1]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

Hinkle v. Apfel, 132 F.3d 1349, 1352 (10ᵗʰ Cir. 1997).  A
claimant must provide medical evidence that he or she had an
impairment and how severe it was during the time the claimant
alleges they were disabled.  20 C.F.R. § 404.1512(c),
§ 416.912(c).

However, plaintiff has failed to point to any medical
evidence which states or indicates that this impairment would
have more than a minimal effect on plaintiff's ability to perform
basic work activities.  The ALJ could reasonably rely on the lack
of medical evidence to find that an impairment is non-severe.
Plaintiff has failed to meet her burden of proof on this issue at
step 2.

Even assuming plaintiff met his burden of proving that one
or more of these impairments were severe impairments, the issue
before the court would be whether it is reversible error if the
ALJ fails to list all the severe impairments at step two.  In
Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10ᵗʰ Cir. July 8,
2008), the claimant argued that the ALJ improperly determined
that several of her impairments did not qualify as severe
impairments.  The court held that once an ALJ has found that
plaintiff has at least one severe impairment, a failure to
designate another as "severe" at step two does not constitute
reversible error because, under the regulations, the agency at
later steps considers the combined effect of all of the

claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two.  The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

In making his RFC findings, the ALJ stated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ also indicated that he considered the opinion evidence (R. at 22).  Furthermore, the ALJ acknowledged that in making an RFC finding, he "must consider all of the claimant's impairments, including impairments that are not severe" (R. at 18).  In light of the fact that the ALJ found other severe impairments at step two, considered all symptoms and evidence when making RFC findings for the plaintiff, considered all of plaintiff's impairments, including non-severe impairments when making his RFC findings, and the failure of plaintiff to cite to medical opinion evidence that plaintiff has limitations

from migraine headaches that were not included in the ALJ's RFC findings, the court finds no reversible error by the ALJ because of his finding that plaintiff's migraines were not a severe impairment.

**VI.  Did the ALJ err in his consideration of plaintiff's mental limitations?**

Finally, plaintiff also alleges error by the ALJ by failing to properly account for the severity of plaintiff's major depression which caused more limitations than those set forth in the ALJ's RFC findings (Doc. 10 at 27).  The ALJ found that plaintiff had a severe impairment of major depressive disorder (R. at 19), and limited her to unskilled work that requires no more than occasional contact with the public and co-workers (R. at 21).  The ALJ noted in his decision that plaintiff had testified that she did not get along well with others (R. at 20).  However, plaintiff failed to cite to any medical evidence that her depression causes limitations not set forth in the ALJ's RFC findings.  In the absence of any such evidence, the court finds no error by the ALJ in his consideration of plaintiff's mental limitations.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of August 2012, Topeka, Kansas.


                              s/ Sam A. Crow
                              Sam A. Crow, U.S. District Senior Judge